[Filed April 27, 1885.]

# BENJAMIN TUCKER *v.* THE SALEM FLOURING MILLS COMPANY ET AL.*

ERROR MUST APPEAR AFFIRMATIVELY—VARIANCE.—The complaint charges the overflowing of plaintiff's land by turning artificial water into the channel of Mill Creek, and the evidence introduced by the plaintiff showed that the overflow was through a slough into which the waters of said creek had been diverted by one Turner; but the record not showing under what circumstances the water was so diverted, nor that Turner was not acting for the defendants, nor that such overflow was not caused by the surplus water turned into Mill Creek by the defendants: *Held,* that error did not affirmatively appear, and that so far as appeared, the variance was immaterial. Error, to reverse a cause, must be shown affirmatively.

INSTRUCTION TO JURY—DAMAGES.—It does not follow, because evidence is admitted that the plaintiff's land had been flooded prior to the time alleged in the complaint, that such damages formed a part of the amount found by the jury. The court should have been asked to, and presumably did, instruct the jury not to consider such evidence in making up their verdict.

SAME.—An instruction that "a verdict should be found for the plaintiff, if it appeared that the defendants, within the last two years," turned water upon the plaintiff, to his damage, will be construed as referring, and understood by the jury to refer, to the two years preceding the commencement of the action, and not the two years preceding the date of the trial.

SAME—PRESCRIPTION—DEFENSE.—A prescriptive right to raise the water in a stream to a certain stage is no defense to an action for damages resulting from an overflow caused by raising the waters above such stage.

TAMPERING WITH JUROR—NEW TRIAL—DISCRETION OF COURT.—Where a party comments on his case in the presence of a juror, it is the duty of an attorney to call the attention of the court to the matter at the first opportunity, if he wishes to avail himself of it. The granting or refusing a new trial in such a case, however, is a matter resting solely in the discretion of the trial judge, and can be reviewed in this court only for abuse of discretion.

MARION COUNTY.        Defendants appeal.

---

* Upon a petition for a rehearing, the court reversed and remanded the cause for a new trial, but upon grounds not discussed in this opinion.—RE-PORTER.

*George H. Burnett* and *Tilmon Ford*, for Appellants.

*Bonhan & Ramsey*, for Respondent.

Thayer, J. This appeal is from a judgment in an action for damages to real property, caused by turning a supply of water from the Santiam River into what is known as Mill Creek, thereby causing the waters thereof to overflow its banks and inundate about fifty acres of the respondent's farming lands, and which caused it to remain too wet for the purposes of husbandry for the two years next prior to the time of the commencement of the action. The case was tried by a jury, and resulted in a verdict for the respondent for the sum of $500, upon which the judgment appealed from was entered.

The appellants have assigned several matters as error, upon which they insist that the judgment should be reversed. The first point is, that the respondent was permitted to show that his land was overflowed by a slough, through and into which the waters of Mill Creek had been turned by a party named Turner. This evidence was objected to, upon the grounds that it was alleged in the complaint that the damage was caused by the overflowage of Mill Creek instead of this slough, and that said Turner had occasioned it, and not the appellants. The statement in the bill of exceptions is so general that this court cannot determine, with any degree of certainty, as to the competency of the evidence. If the respondent's land was overflowed in consequence of the act of Turner, and not of that of the appellants, then it was error to allow proof thereof to be given in order to establish a liability against the latter. But it is not shown where or under what circumstances the water had been turned into the slough, nor how that affected this

case.   For all that appears, Turner may have been act-
ing for and under the direction of the appellants when
he  diverted  the water  from  the  creek  into  the  slough.
And  the  overflow  may  have  been  occasioned  by  the
amount of water the appellants turned into Mill Creek
from  the  Santiam  River.   The  fact  that  the  water  ran
from the slough into the respondent's land, instead of
running  directly from the creek, was  immaterial.   The
variance  between  the  testimony and  the  allegations of
the complaint, in that particular, could not have preju-
diced  the  appellants.   There  may  have  been  error  in
admitting the evidence, but it does not so appear.   Error
must be affirmatively shown.   The presumption is, that
a  judgment  has  been  regularly  recovered.   In  order to
overcome  such  presumption  in  this case, the appellants
must show from the record that the overflow of the water
complained of was caused  by Turner's diverting it, and
not in consequence of their turning water from the San-
tiam  River  into  the  creek.
   The  second  point  is, that  witnesses  were  allowed  to
testify  that the respondent's land, alleged  to  have  been
damaged,  was  flooded  and  damaged  by  the  appellants
prior  to  the two years alleged in the complaint.   This
exception is  subject to the same difficulty as the former
one, in  not  being  explicit.   The  testimony  as  to  the
overflow of the land would necessarily be directed to the
fact as to when it took place.   It might have occurred
two or five years prior to the time of the commencement
of the action.   However that may have been, the respond-
ent, under  his  complaint,  could  only  recover  damages
which it  had occasioned during the two years next pre-
ceding  that  time;  and  if  the  court  permitted  him  to
recover for damages to the land accruing prior to that
period,  it  would  have  been  error.   But  it  does  not
necessarily  follow,  because  the  court  permitted  evi-

dence showing that the land was flooded and damaged
prior to the two years, that the respondent was allowed
to recover for such damages.   Such evidence may have
been, and doubtless was, permitted as a part of the re-
spondent's general evidence in the case, and not with a.
view of recovering damages in the action.   When such
evidence got into the case, the court should have been
requested to instruct the jury not to consider it in mak-
ing up their verdict; and the court very likely did so
instruct, without being requested.   Again, it is not
shown to what extent the evidence of such damages was
allowed to be given.   It may only have shown nominal
damages.   In that case, it would not have been of suffi-
cient importance, in any view, to require a reversal of
the judgment; it would only have added a nominal sum
to the amount of the recovery, which the law would not
regard, upon the maxim, *De minimis non curat lex.*

The third point relates to an instruction of the court to
the jury that a verdict should be found for the respond-
ent, if it appeared from the testimony that the appel-
lants had, within the last two years, turned into said
creek such an amount of water as would have overflowed
upon the respondent's land had the water flowed down
Mill Creek, as originally designed by appellants' predeces-
sors, instead of flowing down the course to which it was
averted by said Turner.   The objection urged to this
instruction seems to be that the jury were made to under-
stand that they could consider any act of diverting the
water by the appellants up to the time of the trial of the
case, and award damages occasioned after the commence-
ment of the action.   The instruction had no reference to
damages; it referred entirely to the right to recover gen-
erally.   The first question for the consideration of the
jury was as to whether the respondent should have a ver-
dict at all.   If they concluded he should, then the next

question would be as to the amount.   But would the jury
have been likely, under the instruction, to have believed
that they had the right to consider the acts of the appel-
lants in diverting the water at any time after the action
was commenced, or any damages that accrued after its
commencement?   They had the pleadings in the case
before them when they made up their verdict; and did
they not know that the acts complained of, and the
damages arising therefrom, referred to acts done and
consequences which had resulted at a period anterior to
the time the action was commenced?   I think that a jury
of good and lawful men would very readily understand
that they were impaneled to try the issues made in the
pleadings, and not to determine some matter that had
occurred after the pleadings had been drawn; that if
the court instructed them as to their duty in case they
found from the testimony that certain acts had occurred
"within the last two years," they would infer at once
that the two years prior to the commencement of the
action were intended, and not the two years next prior to
the time the instruction was given.   If the instruction
had been that the jury might consider acts committed or
damages suffered subsequent to the commencement of the
action, it would of course have been erroneous; but the
court evidently did not intend the instruction to be so
construed, nor does the language used import such mean-
ing.

The fourth point relates to the instruction given by
the court, to the effect that if the respondent never
agreed that the appellants might overflow his land, and
never acquiesced in its being flooded, then the appel-
lants' plea of the statute of limitations should be dis-
missed by the jury.   This instruction was inartificially
drawn, but I hardly think it erroneous.   The appellants
set forth in their answer a prescriptive right to have

water flow from the Santiam River into Mill Creek in the
same or greater quantity than flowed there at the time
of the alleged commission of the damages, and the in-
struction evidently had reference to that part of the
answer, although the words "statute of limitations" were
used.   Whether the facts proved authorized any such
instruction or not, we cannot determine, as they are not
set out in the bill of exceptions; but the instruction, in
view of the fact that prescription is often confounded
with the statute of limitations, could not have injured
the appellants' case, even if not technically correct.   The
jury, doubtless, knew how it was intended to be applied,
and I cannot discover how they could have been misled
to the appellants' prejudice, although the language was
not well chosen.   I imagine there was no evidence justi-
fying such instruction; but we are not, of course, at lib-
erty to assume that.

The fifth ground of error assigned includes the instruc-
tion given by the court to the jury, to the effect that if
they found from the testimony that, during the last two
and one half years, the land of the respondent had been
flooded to a greater extent than ever before, then the
appellants' claim of a right to overflow said land, on
the ground of a right by prescription, should, so far as
the increased flowage was concerned, be dismissed by
them when finding their verdict.   This instruction was
clearly correct and pertinent to the issue.   It went di-
rectly to the point.   The appellants may have acquired
a prescriptive right to raise the water in Mill Creek to a
certain stage, but that would not give them the right to
raise it higher, unless they had been in the uninterrupted
enjoyment of the latter right for a period at least equal
to the statute of limitations.

The sixth and last ground assigned as error is the
refusal of the court to grant a new trial upon the grounds

that the respondent had, in the presence of one of the jurymen, while the case was on trial, conversed in regard to the matter. It is alleged that he said to one Porter, in the presence of such juryman, that the appellants had taken all his property, and that thereupon said Porter said they (referring to appellants) had destroyed respondent's place. The Circuit Court heard the motion upon affidavits and counter-affidavits, and denied it. It is highly improper for a party or any person to make remarks concerning a case, when on trial before a jury, in the presence of any of the jurors; and whenever such practice is indulged in, the judge presiding at the trial should unhesitatingly set aside a verdict in favor of a party who had been guilty of such misconduct. A jury trial would be a miserable farce if the jurors were permitted to be tampered with in any manner whatever. Such trials should be kept entirely free from all suspicion that influences of that character had been exercised to any extent. The granting of a new trial, however, in such a case, is a matter addressed to the discretion of a trial judge, and his decision cannot be reviewed by this court, unless there has been an abuse of discretion; and we cannot reasonably conclude that there was any such abuse in this case. The circuit judge was in a much better situation than this court is to determine the question. He understood better the circumstances under which the conversation took place in the presence of the juror, the nature of it, and its effect upon the case. Besides, there is much force in the position of the respondent's counsel, that the affair should have been presented to the court at once. One of the appellants' attorneys was present when the respondent made the remark, which was in fact a reply to a remark made by the attorney, and he should have called the attention of the court to the matter, as soon thereafter as the court con-

vened, but it was allowed to rest until the trial was concluded and the jury had returned their verdict.

The record fails to disclose error, and the judgment, therefore, is affirmed.