[Filed January 6, 1888.]

BENJAMIN TUCKER, RESPONDENT, *v.* THE SALEM FLOURING MILLS COMPANY ET AL., APPELLANTS.

PLEADINGS — PROOF — VARIANCE. —Evidence that the appellants wrongfully caused the waters of Santiam River to flow into an artificial channel, constructed twenty years before the alleged wrongful act, and which had become the *channel* of "Mill Creek," is sufficient to sustain a charge in the complaint of having caused the waters of the Santiam River to flow "into Mill Creek," thereby damaging plaintiff, etc.

PRACTICE — BILL OF EXCEPTIONS. —It is not proper practice to bring before the court, and the court will not examine, a mass of testimony, in order to find conclusions of fact therefrom.   The bill of exceptions should contain a statement that evidence was given *tending* to prove the fact claimed, and show that proper instructions had been asked, or the jury had made a special finding of the facts, before this court can be required to consider it.

INSTRUCTIONS — EXCEPTIONS TO. — Where the charge consisted of several pages of type-writing matter, and appended to it was a note to the effect that counsel excepted to that portion enclosed in italics, *held*, that this might answer as a memorandum of the parts of the charge excepted to, but was not sufficient under section 230 of the Civil Code as a statement of the exceptions.

WATER-COURSE — CHANNELS. —An instruction that if the jury found that the waters of Mill Creek flowed through the same slough, ditch, or channel on the lands of plaintiff during the two years preceding the commencement of the action that they had been running in for twenty years before that time, then such slough, ditch, or channel was for the purposes of the action the channel of Mill Creek, and its banks the banks of Mill Creek, within the meaning of a complaint, alleging that the defendant had overflowed said Mill Creek to the damage of plaintiff's premises, coupled with an instruction that if one diverts the waters of a stream by artificial means, he is bound to take care of the same until it returns to its natural bed.   *Held*, to be correct.

APPEAL from Marion County.   Affirmed.

*N. B. Knight*, and *George H. Burnett*, for Appellant, The Salem Flouring Mills Co.

The complaint charges damage by overflowing the banks of Mill Creek; but the court below permitted testimony against the objection of the defendants, that the land of plaintiff was overflowed by a certain slough.

We claim that this is not merely a variance, but a failure of proof fatal to plaintiff's case. (*Hill* v. *Supervisors,* 10 Ohio St. 621; *Ashley* v. *Walcott,* 11 Cush. 192; *Dickenson* v. *Worcester,* 7 Allen, 19; *Pickett* v. *Condon,* 18 Md. 412; *Brown* v. *Woodworth,* 5 Barb. 550; *Wilber* v. *Brown,* 3 Denio, 356; *Griffith* v. *Jenkins,* 2 Allen, 589; *Waldheir* v. *R. R. Co.* 71 Mo. 514; *Buffington* v. *A. & P. R. R. Co.* 64 Mo. 246; *Parker* v. *R. & S. R. R. Co.* 16 Barb. 315; *Graves* v. *Severns,* 40 Vt. 636; *Bernhard* v. *Insurance Co.* 40 Iowa, 442; *Thatcher* v. *Heisey,* 21 Ohio St. 668; *Gossam* v. *Badgett,* 6 Bush, 97; *Kelsey* v. *Western,* 2 Comst. 506; *City of Salem Co.* v. *S. F. M. Co.* 12 Or. 374.)

*Tilmon Ford,* and *W. M. Kaiser,* for City of Salem Co., Appellant.

Plaintiff having alleged a joint tort must prove a joint trespass. (*Dahms* v. *Sears,* 13 Or. 64, 65; *Cooper* v. *Blair,* 14 Or. 255.)

*Ramsey & Bingham,* for Respondent, cite 13 Or. 28.

THAYER, J.—This appeal comes here from a judgment of the Circuit Court for the county of Marion, recovered by the respondent against the appellants in an action at law. The action was for damages alleged to have been done by the appellants to the lands of the respondent, by causing a large amount of water to flow from the Santiam River, in said county of Marion, into Mill Creek, a small stream of water which flows through said lands, and thereby causing them to become flooded.

The case has been here before, and after considering it, we concluded that the judgment appealed from then ought to be affirmed, and delivered an opinion to that effect, which will be found in 13 Or. 28. Afterwards, however, a rehearing was granted, and the court, entertaining some doubts upon some of

the questions presented, saw fit to change its decision and send the case back for a new trial. The action of the court in that particular was not in consequence of any distrust entertained as to the correctness of the general view expressed in the opinion referred to, but through an apprehension that an error might have been committed upon the trial of the case prejudicial to the rights of the appellants. The bill of exceptions sent here with the transcript was vague and uncertain, upon some material points in the case, which occasioned the embarrassment.

It appears now that a new trial has been had, and the result been similar to the former one. The verdict of the jury, however, is less by two hundred dollars than that given upon the former trial. The main points in the case presented at this time were considered when it was here before, and it is unnecessary to reconsider them, but the facts connected therewith are more fully shown.

It now appears that the diversion of the water of Mill Creek by Turner, which is referred to in said opinion, occurred some twenty-five years ago, and about twenty years before the appellants are charged in the complaint with having caused the water to flow from the Santiam River into Mill Creek; during all of which time the channel devised and constructed by Turner has, at that point, been the channel of said creek. But the appellants' counsel still insist that there is a marked distinction between the creek proper and the artificial channel, and that the allegations in the complaint, "that defendants by wrongfully causing said water to flow into said Mill Creek have, during the two years last past, wrongfully caused said Mill Creek to overflow its banks on plaintiff's land, and to overflow and flood fifty-five acres," etc., necessarily refers to the old creek channel, and that evidence that the water overflowed the new channel, would not sustain said allegations; and consequently there had been a failure of proof of the complaint.

This court will not adopt any such refined view as that. It would, under any circumstances of the case, only look to the main fact, the alleged wrongfully causing the large amount of water to flow from the said river into the said creek. If the

appellants did that, and it was wrongful, they are liable for the damages occasioned thereby, whether the water overflowed the banks of the old creek, and went onto the respondent's land, or overflowed the new channel, and went onto his land.   Proof of the principal act and its consequences are sufficient, whether the latter resulted from the former in the particular manner alleged, or in some other manner.   It is immaterial in what way the water got onto the respondent's land, if it got there through the wrongful act of the appellants.   There might be a wide variance between the allegations and the proof as to the course of the water in running onto the lands in question, and not be material at all.   Did the appellants do wrong in turning from the Santiam River into Mill Creek the amount of water they turned in during the time referred to in the complaint, is the question to be considered.   They had no right to turn in any more water than would flow in the channel of the creek. If they turned in a supply of water that the banks would not hold, and it escaped and ran upon the lands of an adjoining proprietor, they would be liable for any damages occasioned thereby.   Whether they did that or not was a question for the jury.

Their counsel claimed upon the argument that if the channel of the creek had not been interfered with by said Turner, and the water been allowed to flow down its channel as it formerly did, it would not have overflowed the banks of the creek, or have injured the respondent.   They claimed that Turner had put a dam across the creek, turned the water out into a slough and ditch, which had not the capacity of the old channel, and in consequence thereof, the overflowage and flooding complained of occurred, and they insist that the evidence shows that fact. Whether the evidence sent up here, in what the counsel are pleased to term a bill of exceptions, will warrant such a conclusion or not I shall never know, for I never intend to look into it to ascertain whether such is the fact or not.   If counsel desire a review of such questions they must prepare a bill of exceptions as provided in the Civil Code of the State.   They have no right to throw together in a mass all the testimony given in the case,

as taken down and extended by a short-hand reporter, as has been done in this case, and bring it here and require this court to examine it, and find its conclusions of fact therefrom. No such practice should be tolerated by an appellate tribunal in a proceeding to review errors of law. Had the document termed the bill of exceptions contained a statement that the appellants gave evidence at the trial tending to prove the fact claimed to exist, and it had appeared therefrom that the trial court was requested to instruct the jury that if they found such fact they would find .for the appellants, or the jury under directions of the court had made a special finding of such fact, we would have considered it.

But counsel must learn that this court cannot be converted into a trial court in law actions. Many questions of law may involve an examination of testimony given in a case, such as the overruling of a motion for a nonsuit, but ordinarily, an exception only requires a statement of a small portion of the evidence in order to explain it. But the fault here referred to is not that the objection, constituting the exception, is stated, with more of the evidence than is necessary to explain it; the fact is, it is not stated at all. The proceedings had at the trial, and the evidence taken, are marshaled and sent here for this court to examine and consider the various exceptions indicated therein.

Several points were discussed relative to the charge of the court to the jury. Upon an examination of the transcript, I find that the whole charge is there set out. It consists of eight pages of ordinary type-writing. Appended to it is the following note, viz.: "At the conclusion of the charge, Mr. ———, counsel for defendants, called the attention of the court to those portions of the charge enclosed in brackets, and, after having the same read to the court by the reporter, thereupon stated that they excepted to all said portions so read, and to which the attention of the court was so called, and to the whole, and each and every part thereof."

This might answer as a memorandum of the parts of the charge counsel excepted to, but they are in no suitable shape to be presented here. The statute clearly intends that a statement of the

exceptions shall be made up, settled and allowed, signed by the judge and filed with the clerk, and thereafter it is deemed and taken as a part of the record of the cause. (Civ. Code, § 230.) No such labor-saving shift as that which seems to have been devised and adopted in this case can be countenanced. It would lead to so loose a practice that counsel could not know, nor courts determine, what questions were involved, or were to be decided.

I have examined the instructions of the court to the jury herein, and regard them as very favorable to the appellants. The main one excepted to, so far as indicated by the "brackets," is to the effect that if the jury found from the testimony that the waters of Mill Creek flowed through the same slough, ditch, or channel, on the lands of the plaintiff during the two years complained of that they had been running in for twenty years before that time, then that such slough, ditch, or channel was, for the purpose of the action, the channel of Mill Creek, and its banks were the banks of Mill Creek, within the meaning of the complaint. That instruction was clearly correct. The latter channel, after such a lapse of time, could consistently be termed "Mill Creek." But it is immaterial whether it could be so termed or not. If the pleader had intended to refer to the banks of the old channel as those that were overflown, and it turned out in the proof that it was the banks of the slough or ditch that were overflown, it would have been an immaterial variance, as before suggested.

I have examined the various exceptions to the other portions of the charge, and those also to the refusal of the court to charge as requested by the appellants' counsel, and am of the opinion that none of them were well taken. Some question was made regarding the liability of one appellant for the act of the other, but it seems to have been properly determined at the trial. The jury evidently understood that a liability would not attach to one for the acts of the other, unless the former in some way sanctioned them, and that appellants were not jointly liable for torts committed by them severally. There were no difficult questions of law in the case. The right of the appellants to use the water of the Santiam River, by turning it into Mill Creek and thereby

increasing the volume of water in the latter stream, was conceded. They and their predecessors had been doing that for more than twenty years prior to the time of the overflowage complained of. There was a limit, of course, to the quantity of water they had a right to turn into the creek.

The complaint of the respondent, and claim for damages, proceeded upon the grounds that, during the two years immediately prior to the filing of the complaint, they had turned in an unusual amount, that they had, in effect, overcharged the capacity of the creek. That was the real issue in the case. The appellants' counsel seem to attach the blame on account of the overflow of respondent's land to Turner. He turned the water out of the creek in 1862 or 1863, and ran it around through his mill for milling purposes. He, in fact, changed the channel of the creek for some distance. Whether the capacity of that channel was equal to the capacity of the channel of the creek was a question for the jury.  That condition of affairs existed evidently for about twenty years prior to the alleged grievance. It was a circumstance to be considered in the trial of the question involved in the case, and the court gave the appellants the benefit of it, so far as its attention was called to the fact.  The court was not requested, as I can discover, to instruct the jury as to the effect of this diversion of the water in case they found that the channel established by Turner had less capacity than that of the creek, and that, it seems to me, was the material point.  The court did instruct the jury that if the Santiam water running in Mill Creek was taken out of the creek by Turner, acting for himself, then he and his successors in interest were bound to take care of the water till it got back to the channel of Mill Creek; that the appellants could not be charged with damages caused by the diversion of the water from its natural channel by Turner; that the respondent must show that Turner, and those claiming under him, acted as the agents, or under the control of the appellants, or their predecessors, in order to establish the liability of the latter; that Turner had a right to take water from the natural channel of Mill Creek if he returned it again, but that he or his successors were alone

responsible for the damage caused by the water while out of the natural channel; and that if the overflow complained of was caused by taking the water out of the natural channel of Mill Creek to bring it through Aumsville, the appellants were not liable, unless they caused the diversion of the water.

The court also instructed the jury, in substance, that if the amount of water taken from the Santiam River and turned into Mill Creek had been fixed, and a gauge set to regulate it, and the quantity used for twenty years had been in accordance with the amount so fixed and regulated, and it had been running through the channel established by Turner during that period of time, and it had sufficient capacity to carry away the amount of water up to the gauge, and that after the lapse of that time the appellants turned from the river into the creek more water than the amount fixed, and thereby caused the overflow, they would be liable for the damages caused by the extra amount of water, the amount above the gauge; but that they would not be liable for any damage caused by the water when not raised above the gauge; that in the latter case Turner alone would be liable.

The several instructions given by the court seem to have been fair and correct, in view of the facts and circumstances of the case, and I am unable to discover that any error was committed by the court in the trial of the case. The judgment should therefore be affirmed.

LORD, C. J. (stating the ground of his concurrence).—The court charged the jury in effect that if Turner had diverted the water from its natural channel in Mill Creek, he was bound to take care of it, and that he and his successors would be liable for any damage occasioned thereby before it was returned to the stream. It is, however, disclosed by the record that it was claimed by the plaintiff, and that there was some evidence tending to prove that there was a slough through which the waters of Mill Creek flowed, especially during seasons of high water, and which formed a part of, or was one of the beds of Mill Creek, and that by ditching, Turner had utilized it for milling purposes; that the defendants were using Mill Creek as a ditch

to convey water from the Santiam River to run their mills at Salem; that for more than twenty years the waters of Mill Creek, or at least a part thereof, flowed through this slough, which has been used and adopted by the defendants for the purpose of carrying water to their mills, and that the injury occurred by the wrongful act of the defendants in turning into Mill Creek from the Santiam an excess of water beyond its carrying capacity, etc. The court charged the jury in substance that if they found from the testimony that the waters of Mill Creek flowed through the slough, and had been doing so for more than twenty years, and used by the defendants for running their mills, that such slough was for the purposes of the case the channel of Mill Creek. There was no error in this, or anything that indicates that an artificial diversion of water makes a natural stream. On the contrary, the court expressly instructed the jury as to the effect of a diversion of the stream, and the liability for damages arising therefrom.

It was the fact, if they found that part of the waters of Mill Creek, not by artificial means, but naturally, flowed through this slough, and had done so for more than twenty years, etc., that for the purposes of the action its channel and banks were the banks of Mill Creek.

As there was no error of law upon these points, the verdict of the jury has passed the case out of our jurisdiction.