Argued March 7, decided March 28, rehearing denied April 19, 1911.

## STATE v. MORRIS.

[114 Pac. 476.]

CRIMINAL LAW—TRIAL—SEPARATION OF JURY.

1. Under the provision of Section 137, L. O. L., it is discretionary with the court to allow the jury to separate during the trial.

CRIMINAL LAW—APPEAL—NECESSITY OF EXCEPTIONS.

2. Defendant not having objected or excepted to the court's failure at the noon recess and the adjournment for the day to admonish the jury not to converse about the case, or to its telling the jury they would be permitted to read the newspapers containing accounts of such trial, the procedure of the court in such respects cannot be considered on appeal.

CRIMINAL LAW—EVIDENCE—RES GESTAE—EMBEZZLEMENT—OWNERSHIP
OF PROPERTY.

3. Testimony on a prosecution of an officer of a bank for embezzlement, that witness and defendant were incorporators of the bank, and gave their notes for $25,000 each for stock for which they subscribed, is admissible as part of the res gestae or history of the transaction, tending to prove the essential allegation that the bank owned said note of defendant, which was one of those mentioned in the indictment.

EMBEZZLEMENT—EVIDENCE—VALUE OF PROPERTY.

4. A commercial agency statement of defendant's financial condition, furnished by him at the time he gave his note to a bank, which is in the nature of a declaration by him on the subject of his wealth, is on his prosecution for subsequently embezzling it admissible, as material to make the necessary proof of value of the note.

EMBEZZLEMENT—TAKING OF VARIOUS KINDS OF PROPERTY.

5. The taking of various kinds of property may constitute but a single offense of embezzlement, depending on the time and circumstances · thereof.

CRIMINAL LAW—RECEPTION OF EVIDENCE—ELECTION.

6. To require the prosecution to elect whether it will rely for conviction on embezzlement of money or notes, where the alleged duplicity does not appear on the face of the indictment, but only in the evidence, is purely in the discretion of the trial court.

INDICTMENT—DEFECTS CURED BY VERDICT—DUPLICITY.

7. Any duplicity in an indictment charging embezzlement of notes and of money is cured by a verdict finding defendant guilty of embezzling the notes; this being in effect an acquittal of embezzlement of the money.

INDICTMENT—MATTERS OF DESCRIPTION—SURPLUSAGE.

8. A "promissory note" being by that name, made a subject of larceny by Section 1947, L. O. L., and it being sufficient in charging a statutory crime to use the words of the statute defining the offense, it is unnecessary for the indictment for embezzlement of promissory notes to allege that the grand jury cannot give a more particular description; and such allegation, being made, may be disregarded as surplusage.

WITNESSES—CROSS-EXAMINATION—CONTRADICTION.

9. The state on cross-examination of defendant may exhibit to him, and interrogate him on, an advertisement, of which as an officer of the bank he was the producing cause, containing a statement of the condition of a bank; it being his published statement of the matter therein set forth, and tending to contradict his testimony in chief as to the cash account of the bank.

WITNESSES—CONTRADICTION—EVIDENCE—ADVERTISEMENT.

10. An advertisement in a newspaper, published with defendant's approval, and just as it was typewritten at his direction, and not the typewritten copy prepared for the printer, is the original for purpose of exhibition to defendant and cross-examination of him thereon to contradict his testimony in chief.

CRIMINAL LAW—NEW TRIAL—MATTERS AFFECTING JURY.

11. That some one tried to bribe a juror, and that he, on bringing to the court's attention this fact, which was kept from the other jurors, was cautioned by the court not to allow it to affect in any manner his judgment or consideration of the case, does not call for a new trial; there being nothing to show that the reaction from the offer disturbed his equilibrium as a fair-minded juror.

CRIMINAL LAW—NEW TRIAL—MISCONDUCT OF JUROR—DISCRETION.

12. The allowance or refusal of a new trial for misconduct of a juror is discretionary with the trial court, and not to be disturbed except for manifest abuse of discretion.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE BURNETT.

The charging part of the indictment in this case is as follows:

"The said W. H. Moore and W. C. Morris on the 15th day of December, A. D. 1906, in the county of Multnomah

and State of Oregon, were officers, agents, servants, and employees of the Oregon Trust & Savings Bank, an incorporation, and, being such officers, agents, servants, and employees, there did then and there come into their possession and be under their care by virtue of such employment one certain promissory note for the sum of ten thousand dollars ($10,000) of the value of ten thousand dollars ($10,000), one promissory note for the sum of twenty-five thousand dollars ($25,000) and of the value of twenty-five thousand dollars ($25,000), one promissory note for the sum of thirty-nine thousand one hundred dollars ($39,100) and of the value of thirty-nine thousand one hundred dollars ($39,100), one promissory note for the sum of nine hundred dollars ($900) and of the value of nine hundred dollars ($900), a more particular description of any of which promissory notes is to the grand jury unknown and divers gold and silver coins and currency bills, lawful money of the United States of America, bank notes, checks, drafts, bills of exchange, and valuable securities, a more particular description of which is to the grand jury unknown, of the value of fifty thousand dollars ($50,000), all of the personal property of the said incorporation and the said promissory notes, money, bank notes, checks, drafts, bills of exchange and valuable securities being so in their possession and under their care, the said W. H. Moore and W. C. Morris did then and there feloniously embezzle and fraudulently convert the same to their own use."

From a conviction after a separate trial on a plea of not guilty, the defendant Morris appeals. AFFIRMED.

For appellant there was a brief with oral arguments *Mr. M. J. Gordon* and *Messrs. Sweek & Fouts.*

For the State there was a brief with oral arguments by *Mr. George J. Cameron,* district attorney, *Mr. John J. Fitzgerald,* deputy district attorney and *Mr. A. E. Clark,* special prosecutor.

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The defendant assigns as error the failure of the court at the noon recess of May 5, 1910, and at the

adjournment for that day, to admonish the jury not to converse about the case. He further objects that the court erred in permitting the jury to separate during the trial, that it abused its discretion in denying the appellant's request that the jury be kept together, and that it was at fault in telling the jury it would be permitted to read newspapers containing accounts of the trial. The record does not disclose that the defendant objected or excepted to the conduct of the court in either of these instances. It is discretionary with the court to allow the jury to separate. Section 137, L. O. L.

2. Moreover, counsel for the defendant could have directed the courts attention to its omission to admonish the jury. They could also have directed the court's attention to the other errors complained of and hereinbefore noted, but, no exception having been taken to the procedure of the court in those respects, we cannot consider them here: *State* v. *Foot You,* 24 Or. 61 (32 Pac. 1031: 33 Pac. 537).

3. It is also contended by the defendant that the court erred in permitting the State to show by the witness Ralston that he and the defendant were among the incorporators of the bank mentioned in the indictment, and gave their promissory notes for $25,000 each for stock which they subscribed. This testimony was admissible as part of the *res gestae* or history of the transaction tending to prove the essential allegation that the bank owned the note of the defendant in question; that note being one of those mentioned in the indictment as subsequently disclosed by the testimony.

4. The witness Ralston, while on the stand, identified a statement made on a Bradstreet's Commercial Agency blank which he testified was given to him by the defendant at the organization of the bank as a representation of defendant's financial condition, and which put the value of his assets above

$53,000 on April 26, 1904.    This statement was in the nature of a declaration of the defendant on the subject of his wealth, and was a circumstance which the jury had a right to consider for the purpose of throwing light on the value of the note in question.    It was material to prove the value of the note, because embezzlement, the crime described in the indictment, can be predicated under our statute only of property which is the subject of larceny.

5. Further complaint is made that the court erred in denying the appellant's motion to compel the State to elect upon which of two charges of embezzlement—that of the notes or that of the money—it would rely for a conviction, inasmuch as the evidence from the view point of the defendant showed them to be separate and distinct. The defendant made a motion for that purpose at the close of the evidence on the part of the State.    It is conceded that the alleged · duplicity does not appear on the face of the indictment.    It is possible to embezzle or steal many different subjects of larceny at the same time and under circumstances constituting but one offense.

6. There was testimony disclosed by the record which the jury was authorized to consider tending to show that the notes described in the indictment and the cash amount of $50,000 were both taken from the bank December 15, 1904.    Of course, the defendant's testimony tends to explain the $50,000 cash item as a mere matter of fictitious entries in the books for appearance sake involving no actual cash.    There is sufficient dispute in the testimony to take the case to the jury on that point.    But, aside from all that, to require the prosecution to elect in cases where the alleged duplicity appears only by the testimony is purely within the discretion of the trial court.    *Roberts* v. *People,* 11 Colo. 213 (17 Pac. 637) ; *Glover* v. *State,* 109 Ind. 391 (10 N. E. 282) ; *Smith* v. *State,* 8 Lea (Tenn.) 386; *People* v. *Shotwell,* 27 Cal. 394.

7. Further, the verdict rendered in this case was as follows, omitting the caption:

"We, the jury duly impaneled in the above-entitled court and cause, find the defendant W. C. Morris guilty as charged in the indictment and find the value of the property embezzled to be $75,000, in notes.

[Signed] J. F. Hill, foreman."

Manifestly the effect of this verdict finding him guilty of the embezzlement of $75,000 worth of notes would operate as an acquittal of the embezzlement of $50,000 in cash. At least, the defendant could plead the judgment rendered on this verdict in bar of a subsequent prosecution for embezzling this particular sum of $50,000. Conceding, without deciding, that the duplicity alleged appears in the evidence so that he stood charged with one crime of embezzlement of notes amounting to $75,000 and another embezzlement amounting to $50,000 in money, yet such duplicity was cured by the acquittal of the latter charge: *State* v. *Miller*, 24 Conn. 522; *State* v. *Merrill*, 44 N. H. 624.

8. It is also assigned as error that the court denied the appellant's motion to withdraw from the consideration of the jury all the evidence tending to show an embezzlement of the notes on the ground that the indictment states that "a more particular description of any of which promissory notes is to the grand jury unknown," whereas, according to the claim of the defendant, it appeared from the evidence that the grand jury could readily have ascertained a more particular description of the notes. During the course of the trial, the State gave evidence in chief tending to show not only the amounts of the notes mentioned in the indictment, but also the names of the makers, and these names, not having been mentioned in the indictment, gave rise to this objection of the defendant. It is by no means certain from an examination of the record that the grand jury

had sufficient knowledge to say on their oaths at the time of returning the indictment that they could give a better description. It is true that a more detailed description could have been given if the notes had been before them. They might have gone so far as to set out a copy of the notes to give the color of the paper, etc., but there is not sufficient in the testimony to authorize the court to presume that the grand jury either purposely or negligently made an untrue statement when they said in the indictment that they could not give a more particular description of the notes. The reason of the rule allowing such pleading is found in the fact that sometimes the leading features of a crime can be established, while some detail, such as a name or particular description of an object or property, cannot be given, and justice would fail if, under such circumstances, a violator of the law was allowed to escape. But, when the reason of the rule fails, the rule also fails. "Promissory note" by that name is made a subject of larceny under our code. Section 1947, L. O. L. We have no common-law crimes in this State (*State* v. *Vowels*, 4 Or. 324), and it has been often held that it is sufficient in charging a statutory crime to use the words of the statute defining the offense. It is sufficient in charging larceny of property to use the statutory name, without further detailed description: *Commonwealth* v. *Brettun*, 100 Mass. 206 (97 Am. Dec. 95) ; *Dignowitty* v. *State*, 17 Tex. 521 (67 Am. Dec. 670). In describing the notes mentioned in the indictment, the grand jury went further than required by the statute, and alleged more than was necessary in giving the amount of each one. It was not requisite or necessary to say that they could not give a more particular description, and that allegation may be disregarded as surplusage. Whar. Cr. Pl. (8 ed.) § 158. Still, further, it does not appear in any way that the defendant was misled or prejudiced by the failure of the State to give

a more particular description of the notes mentioned in the indictment. But the court, as disclosed by the record, in order more fully to protect the rights of the defendant, offered to declare an adjournment for a reasonable length of time to enable him properly to prepare and present his defense against the charge of embezzling the notes, but no advantage was taken of this offer. Hence it cannot be said in reason that the defendant's rights were abused in that regard.

9. As a witness in his own behalf in his direct examination, the defendant gave evidence explaining about cash entries on the books and other affairs of the bank. On cross-examination, the prosecution exhibited to him a copy of a newspaper of September 8, 1906, containing an advertisement of the condition of the bank at the close of business September 4, 1906, apparently verified by the affidavit of the defendant. The defendant said in his testimony:

"That is a copy of a statement that we got out at that time, if that is what you want."

He further testified that such statements were generally gotten up by the bookkeeper or assistant cashier; that the defendant approved this one; that his name was probably signed to it on a typewriter by the stenographer; that it was gotten up just to publish and was published with his approval; and that he had charge of the advertising.

10. The defendant's counsel objected to the reception of the statement in evidence because it was not proper cross-examination, that it was immaterial, and that the original paper prepared by the stenographer was the best evidence. By his testimony the defendant in effect admits that he was the producing cause of the advertisement. He thus makes the printing of that advertisement his own act. The statement was proper cross-examina-

tion because it tended to contradict statements he had made about the condition of the cash account of the bank. The advertisement was his published statement of the matter therein set forth which the prosecution had a right to submit to him in cross-examination as tending to contradict and weaken his testimony in chief. There is no merit in his contention about the typewritten copy for the printer being the original, which must be produced. The advertisement was the result which the defendant desired and wrought. The handiwork of the stenographer was only a means used to accomplish that result. The advertisement itself, in reason under his own testimony, is original for all the purposes of this case, and was competent cross-examination. These assignments of error were all repeated and brought to the attention of the court in the form of a motion for a new trial, but do not require further notice.

11. The principal matter relied upon in the motion for a new trial in addition to those already noted is the alleged misconduct of a juror named Barton, and incidentally alleged misconduct of the judge who heard the cause, and of counsel for the prosecution. It appears from the record that on the evening of the day the testimony had been closed and prior to the argument of counsel some one approached the juror Barton at his residence with an offer to bribe him, but in whose interest the bribe was offered does not appear in the record. Not being able to locate the judge who presided at the trial at that hour, it being about nine o'clock in the evening, Barton telephoned to the assistant counsel for the State, soliciting an interview with him at his office. On reaching there, he made a brief statement to counsel, who refused to hear further until he communicated with the judge. He immediately telephoned to the judge, who instructed him to call a stenographer and counsel for the State, and take the statement of the juror about the offer to bribe

him. On further consideration, the attorneys called up the judge at his residence and requested him to come in and give the matter his personal attention. By agreement the judge and the juror and the counsel for the State met at the police station and talked over the matter of the attempted bribery, the judge first cautioning the juror not to allow the offer of the bribe to affect in any manner his judgment or consideration of the case on trial. So far as appears on the record, this was the only allusion whatever made to the case then being tried. There was no reference to the evidence or issues of the case whatever, except what might be implied from this caution of the judge. The record discloses that the juror repelled the offer of the bribe, and would not consider it. He could not do otherwise as an honest man. This could not be charged as misconduct of the juror. All that the judge or counsel did was to ascertain from Barton the facts about the attempt to bribe him, and to try to apprehend the man offering the bribe. This could not be misconduct on their part. As public officers they would have been remiss in their duty if they had not made a reasonable effort to apprehend the briber. Everything was done which could have been reasonably done to isolate and neutralize the effect of this incident for which no one connected with either side seems responsible. Counsel for the defendant have cited many cases about the misconduct of the jury and about holding communications with it, but almost without exception they are cases where the communication took place after the jury had retired to consider their verdict. Among the authorities cited by the defendant on this point, the case of *People* v. *Mitchell*, 100 Cal. 328 (34 Pac. 698) is an exception. In that case one of the principal witnesses for the defendant in a murder case was his paramour, who kept a disreputable place and with whom he lived. During the trial four of the jurors visited her place repeatedly, and

their conduct became so notorious that the judge repri-
manded them and placed them in the custody of the
sheriff, and his comments were published in the news-
papers. The sheriff also told the jury that, if a disagree-
ment was brought about by those of their number guilty
of the misconduct, "there will be hell to pay." It was
held that a conviction in that case should be set aside
because freedom of action of the jury had been foreclosed
by the notoriety attending their misconduct, and the only
way they could free themselves from suspicion was by
a conviction. No such element of coercion appears in this
case. The juror was left free to follow his own judgment.
The offer to bribe him was kept from his fellow jurors.
The record discloses that he acted only as an honest man.
If he had yielded or appeared to yield on one hand, or if
anything was done which tended to show on the other
that the reaction from the offer disturbed his equilibrium
as a fair-minded juror, the case would be different; but
nothing like that is disclosed by the record.

12. The allowance of a new trial for misconduct of
the jury is discretionary with the trial court, and its
discretion will not be overturned on appeal except for
manifest abuse:   *Tucker* v. *Salem Flouring Mills Co.*, 13
Or. 28 (7 Pac. 53) ; *State* v. *McDaniel*, 39 Or. 161 (65
Pac. 520) ; *State* v. *Smith*, 43 Or. 109 (71 Pac. 973).

The question then is: Did the court abuse its discre-
tion under all the circumstances? The judge of that
court had before him all the evidence in the case. He
had under consideration a juror whose integrity was
apparent and under these circumstances, we cannot fairly
or properly say that the court abused its discretion in
denying a new trial.

The judgment is affirmed.                    AFFIRMED.