Argued February 1, affirmed February 12, 1973

ALLEN, *Respondent, v.* CITY OF GOLD BEACH
(No. 6409), *Appellant.*
506 P2d 507

*William E. Taylor,* City Attorney, Gold Beach, argued the cause and filed the brief for appellant.

*Robert F. Walberg,* Coos Bay, argued the cause for respondent. With him on the brief were Walsh, Chandler & Walberg, Coos Bay.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

The complaint in this tort action alleged plaintiff's home was negligently damaged by ground waters wrongfully diverted by the defendant city from its normal flow along a publicly maintained street. It charged negligence both in the form of improper ditching and in the failure to properly maintain a city culvert under the street. The city conceded in its answer that the plaintiff's property " '* * * is subject to flooding and overflowing by surface waters from the adjoining street and property as a part of a natural drain way * * *' " and that the damage to his home was caused solely by this natural process rather than because of any negligence by the city. It also alleged as a second affirmative defense that the city had acquired prescriptive rights to have its street

surface water overflow onto plaintiff's property by its own adverse use for more than ten years openly and hostile to the plaintiff's rights.

The jury returned a verdict in plaintiff's favor. In its appeal the city asserts two assignments of error. The first is that the court erroneously removed from the jury its second affirmative defense of prescriptive right to have the surface water flow across plaintiff's property for more than ten years. The second relates to the striking of certain opinion evidence offered by the city relating to the value of plaintiff's home before and after damage.

The court struck the second affirmative defense because of insufficiency of the evidence to support it. In its brief the city states:

"* * * It must be conceded that there is no *direct* evidence contrary to this statement. However, it is submitted that there was sufficient *indirect* evidence to raise the issue that the water flow was no different at the time claimed than it was before, and thus the issue of prescription was improperly excluded."

■■ In effect, the city, through the testimony of a city employe, attempted to show that neither its method of street maintenance nor the flow of water along the street had changed for at least 16 years, and thus by implication that the street surface waters must have regularly flowed during rainy seasons across plaintiff's property, and, if we understand its contention, even through his home. We agree with the trial court that there was clearly insufficient evidence to support the claim of acquisition by the city of a right by prescription to have its surface waters flow across plaintiff's property and through his home in the manner estab-

lished by the evidence. Merely because a city employe testified that he had been on the street in front of plaintiff's home and had seen surface water flowing from the street onto plaintiff's property does not support a conclusion that such condition was created or permitted by the city in the assertion of an open, notorious, hostile and exclusive possession against the admitted ownership of the plaintiff. *Laurance et al v. Tucker,* 160 Or 474, 85 P2d 374 (1939); *Harris v. Southeast Portland Lumber Co.,* 123 Or 549, 262 P 243 (1927). Nor was there any direct testimony that plaintiff's home itself had been flooded other than during the last two or three years prior to the filing of the complaint. Mere flooding of lands, however long continued, is not "possession," which will ripen into title to an interest in land. *Harris v. Southeast Portland Lumber Co.,* supra at 555.

■ Furthermore, even though there was evidence of a prescriptive right shown in the city to have overflow surface waters flow across a portion of plaintiff's land, such prescriptive right does not extend to the overflowing of the water over that portion of the land where plaintiff's home itself was located and the resulting inundation and undermining of the dwelling itself, unless the evidence warranted that such had continued for the prescriptive period. *Tucker v. Flouring Mills Co.,* 13 Or 28, 33, 7 P 53 (1885). There was a total failure of any such evidence here.

In *Levene et ux v. City of Salem,* 191 Or 182, 190-91, 229 P2d 255 (1951), the Supreme Court discussed at length the rules relating to the liability of a city for its diversion of surface waters onto the lands of another, stating:

"A municipality is liable in damages if it col-

lects diffused surface waters into a drain, and, through such drain, empties them, either immediately or by force of gravitation, upon a person's land. * * * It is quite generally held that such action upon the part of a municipality amounts to a direct tresspass [sic]. * * * The gist of the injury complained of in the present case is the casting of an increased volume of water into the watercourse crossing plaintiffs' premises, without there being an adequate outlet therefor. Such a positive act is a tort 'arising from wrongful and unauthorized conduct rather than negligence, and the maxim that a man must so use his own as not unnecessarily to do injury to another is applicable.' * * * For damages directly resulting from such active wrongdoing the city is without immunity. * * *

"Defendant city contends, however, that it may without liability drain surface water from land, by means of artificial ditches or tiles, into a stream or onto lands where it would naturally flow, even though such natural flowage is thereby accelerated. As an abstract statement, this is true, but in so doing the municipality must act with a reasonable consideration for the rights of the lower proprietor. If its acts cause an unusual and unreasonable amount of water to be emptied upon the lower land, it is liable in damages to the owner thereof. * * *"

During the trial the city called a real estate broker to testify concerning the extent of the damages. The final question relates to the admissibility of his opinion concerning the amount of damages plaintiff sustained. The broker testified that he had inspected the property after the damage. He had not, however, made any inspection of its condition prior to the filing of the complaint, and testified, "I have never been in this house before * * *." Nor had he been on the property before the damage at all. There was no evidence to show that he heard during the trial facts con-

cerning the condition of the home prior to its damage or indeed that he had received any information relating to its condition. The evidence was undisputed that much of the damage to the dwelling was visible only from the inside.

The general rule concerning the measure of damages to real property in this type of action is stated in 22 Am Jur 2d 190-91, Damages § 132:

> "The goal of the damage remedy in cases involving injury to a person's interest in real property is that of compensation. One whose interest in realty has been injured by the tortious act or omission of another is entitled to those damages which will compensate him for the injury sustained. Generally, this principle is translated into the following two rules of damages: (1) the injured party is entitled to recover the difference between the value of the real property immediately before and immediately after the injury (often referred to as the 'diminution in value' rule); (2) the injured party is entitled to recover the cost of repairing the realty by restoring it to its condition immediately prior to the injury (generally referred to as the 'restoration' or 'cost of repair' rule). * * *"

Defendant sought to elicit from the witness that the home was worthless at the time he inspected it, which was after it had been damaged, and that, in the broker's opinion, it was worthless before, although he had never inspected it or been in it or been on the property prior to the infliction of the damages.

■ Plaintiff objected on the ground that no proper foundation had been laid. The court allowed the city to attempt to lay a foundation to support the witness's opinion concerning the value of the house prior to the damage. It was unable to do so. The court on motion then ordered his testimony stricken. We agree. Here,

the crucial question was the before and after value. Since there was no showing that the witness had, or during the trial heard, any factual knowledge concerning the condition of the home prior to the infliction of damage, such opinion was based, so far as the record shows, on pure speculation. As such, it was worthless. *Warner v. Synnes et al*, 114 Or 451, 230 P 362, 235 P 305, 44 ALR 904 (1925).

Affirmed.